May it please the court. My name is Peter Goldberger, and it's my privilege to represent Devon Sanders, who was obviously the appellant here and was defendant below. I'd like to reserve two minutes of my time for rebuttal. We have both Goldberger and Zosmer in the I'm sure you're agreeing, by the way. Yeah, I'm sure. I agree with the second half of that. Mr. Sanders pleaded guilty with no plea agreement to two counts, one of receiving, one of possessing child pornography. And we argued from the very beginning of this case, including at the time of the plea, that under double jeopardy, these two counts on on the essential facts of the case constituted would support only a single judgment under the double jeopardy clause, as interpreted in this court's. If you're right, what does it get you? I'm amazed it was charged this way with three videos in March and then 94,000 later. But it is apparently none of this is somewhat contested. But it seems from what the district court said that the 94,000 included the three that were there in March. But but if you win, it emerges. What does that get you? It gets you the discretion of the sentencing judge to select either count for sentencing and thus potentially to defeat the mandatory minimum. But what was that's the point. What was the. I guess I'm working backwards here, but what was the guideline range? It was I don't remember exactly, but it's in the neighborhood of the sentence that he got the 84 months from touch. I thought I thought he went under. Judge Stengel went out. That may very well be. That may very well be another judge could could and should go lower. And we argued for probation in this case. And this part of it here, whether or not a mandatory applies, if the mandatory applied. I mean, there's a different question. And that's our second point, which I didn't intend to argue orally, is that probation will be available even on that count under the language of the probation statute. But back to back to the first one. I mean, obviously, we can have sympathy for your position, but the case you cite Miller involved charges brought on the same images here. The images were different. You may say I disagree. Really? You have three videos and the ninety four thousand other. Items, so count one, count two, how can this be Miller? The possession count count two is not possession of an image or specified images. It's possession of matter, which in this case was alleged to be, and we agreed was a laptop computer and three are external hard drives which contain and this is the essential facts part. All of these images, including the three videos, but possession is not December of 2015. Right. Yes. The receiving of the videos was in the other ninety four thousand images were in May of 2016. Is that right? No. Possession is a continuing offense. They were possessed. And this was the established fact at the time of the plea continuously over a period of time beginning. And we gave we gave the latest date that would for the government's benefit. Honestly, March of 2015, when he acquired the laptop through May of 2016. It's a continuing offense. The government. This is the point. The government cannot defeat a constitutional right by double jeopardy, by clever draftsmanship. And they admit in their brief that they drafted the indictment for the purpose of defeating the right. But you can't. But the law makes possession a continuing offense and prevents the government from asserting. By Fiat, that possession occurred on one day. They can't pick a day that's different and call that the possession. But when I looked at all of the other cases that are out there, whether it be Finley or Briner, Polizzi, Schnicker, Holliday, Dudek, I could go on. I mean, they support the government's position. Some do and some don't. I was in Polizzi. I argued Polizzi in the Second Circuit. And I know in that case they the government did successfully separate so that there were none of the received images were among the allegedly possessed images. Here you have overlap of the in the essential facts. So and that makes it a violation on the Miller. Is what you're saying that if you possess prior to December of 2015. Ninety four thousand and three and you say there's three videos that we have possession that you can't then later say the ninety four thousand. And other items on possession. Is that right? It's thousands of images in in March. But if they say and continue to possess them through and beyond December on the same equipment, you can't be charged with possessing that equipment on account of it, having child pornography on it without violating double jeopardy. So but if they say that you received three of the ninety four thousand and three and then you later possessed ninety four thousand, you're saying you can't do that and you and you and you continue to possess, not later possess. If you possessed before and continue to possess through and beyond that date, equipment that contains at least one offending picture and in fact thousands. So in effect, you have to break the chain and divest yourself of the possession at some point in order and then repossess in order to be reached, be charged and not have a double jeopardy problem. Then it's not trying to get charged with the government. The government wanted I for reasons I don't understand what they consider us a lesser second count in the case and insisted on that. And they chose to create this problem by their charging. They knew the issue. We were arguing about this from the beginning. And what cases go your way? Miller, I just but Miller was on the same images. You're saying the same image. You're saying same images should be interpreted the way you suggest. Yes, because Miller says that that the on unassigned differences in the non essential facts don't matter. What matters is the essential facts. And the essential fact is that the equipment which was continuously possessed included the same images. That we're also charged with having been received in the middle of that time period. So the three videos that are initially received in December, those were on the computer. They were received through the computer and saved on one of the hard drives, which was alleged to be the matter that was possessed and which was, in fact, possessed, as Mr. Sanders stated to the judge under oath at the time of the plea from the preceding spring into the into and up to the day of the search warrant execution. Yes. So our our view is that what's wrong with the government's position is on our two main arguments is the same in on this issue. They just don't accept what Miller says. And I think that a constitutional opinion, a unanimous opinion of a panel written by Judge Pollack can be taken to mean what it says. And this is what it says, that these offenses are the same offense under when the essential facts overlap in this way. And they're the same. The problem with the government's argument on restitution is the same. They don't accept the controlling precedent on its face, which is Paroline. But didn't the district court very precisely go through and disaggregate it like that? No, no, no, no, no. Considering the multiple factors that are suggested and not exclusive and not mandatory under Paroline, that's Paroline step two. What's called disaggregation. This funny word is a prior and separate first step, which is the key to implementing the Paroline holding. The holding of Paroline, like the holding of so much restitution law, is the defendant cannot be required to pay restitution for an offense he did not commit or was not convicted of committing. Right. So disaggregation is the first step, which is these children or former children who are the victims in these cases have been victimized twice. First, by someone who sexually abused them and took pictures of that abuse, often the same person, not necessarily, and put those pictures out for distribution. And that abuse, we all know, causes terrible harm to children. That kind of abuse caused harm to Mr. Sanders when he was a child. We know that abuse causes harm and that harm is terrible and it is the greatest harm, the greater harm. The law says, and some theories also say, that the looking at the pictures by other people later also causes harm. The distress of knowing that people are looking at the pictures. And we accept that for purposes of the argument. But that is a different and in most cases, lesser harm that and in any event, it's not important that it's a lesser harm. It's a different harm. And it's a subsequent harm. And that's what the pictures have been taken in the first place. If there wasn't a market for them, the person in many, many cases knows that, boy, I can do this for myself. Yeah, but I can also do this for 50,000 other people on the Internet who are going to want to buy these pictures. In some cases, that's so. And in other cases, the pictures are taken for the perverse gratification of the person taking the pictures. But we don't win. It doesn't matter that the I'm sorry. OK. The fact that there is knowledge of an aftermarket should not the people in the aftermarket be somewhat responsible for the taking of the pictures in the first place. That's not what the Supreme Court says. But the Supreme Court says is that the harm is that the harm that is caused by the sexual abuse. What's just limited to that, if you want the harm limited caused by the sexual abuse of the child, which is terrible. Has to some effort has to be made to evaluate and put estimate, not calculate, but estimate. And there are experts who do this, the harm and make sure that the defendant or any defendant who's accused later of the possession. And this is a mere possession case. No. And with no commercial aspect to it at all. No trading. It's a pure possession case like Caroline, that those are defendants are assessed only for their own contribution to the victim's harm. And the step one of that process has to be some calculation of some fair estimated way of what the harm was that he's not responsible for the sexual abuse. I don't think it's I don't think somebody abuses a child because they think that by doing so they can distribute pictures. And if it does, it would be a rare case. People do this for whatever psychological reason of their own. But. You when the government chose to use as their submission for restitution, the reports from the victim's private lawyers, that's the business they're in, is collecting money for these reports. And those people can't bother to update their reports. They can't bother to refine the report after Caroline to comply with Caroline. Then they have failed to then the government has failed to meet their burden of proof. And what other kind of case, civil or criminal, where the where the burden is clearly assigned to one party. And the party fails, as Judge Stengel said in his opinion, fails in numerous ways to meet their burden of proof is the consequence that their demand gets reduced by two thirds. And they get a third of what they asked for, as opposed to saying, you didn't meet your burden of proof. You lose. There's no other kind of case in which the consequence of failing to meet your burden of proof is that you only get a third of what you asked for. So I'm reserve the rest of my time for rebuttal. I'm happy to continue on with questions. But the heart of the case is a failure to comply. If I just wrap it up this way, they were to comply with a Supreme Court precedent that the government in a case that the government lost and was unhappy about losing. And they took that complaint to the right forum, which is Congress. And in 2018, the statute was amended. The statute, there's a post-Caroline, the government would call it a Caroline fix for 2259 went into effect later, but it doesn't apply retroactively. And so in this 2015 case, we have a failure to comply with controlling Supreme Court precedent. The government finds hard to comply with and they didn't satisfy their burden. Your Honor's may please the court. Allison Keener, on behalf of the government, I want to start where Mr Goldberger left off, which is with the restitution order in this case and his assertion that the government has not complied with its obligations under Caroline to produce evidence and prove by preponderance of the evidence that the amount of loss that we have apportioned to Mr. Sanders is relative to what his harm has been to these 22 victims. The district court in this case did an excellent job, did its job in so far as it applied Caroline in a way that recognizes that the guidepost, it's a messy process, it's just the way it is, Caroline itself recognized it's a messy process. And the district court here did the best it could to approximate the amount of harm based on the submissions that the government provided. Where's the one third number coming from? Where is that just kind of an arbitrary? Well, X would be like a Goldilocks solution. X is too much, Y is too little. I'll take Goldilocks in the middle and that's one third. Where's it coming from? So Caroline doesn't say, doesn't prescribe a particular methodology. And that's really what this is because they can't. That's exactly right. And I think in this case what the district court did was look at the submissions that the government provided here in exhibits B through M in the district court record below, and the court has on appeal, and looked at the fact that they weren't uniform. I mean, this is a very unusual case in that there were 22 victims, a very large amount of images at stake, a very significant amount of harm that each of these victims have suffered. So it sort of took an approach, the two thirds approach is really two thirds discount, if you will, is to account for the fact that it's a difficult and messy process. Why two thirds? We're not seven eighths, we're not nine tenths. I think that the district court could have done that as well. It's within the district court's discretion to decide how much of the apportionment of harm is relative to this defendant's loss. So I don't, I think they could have done seven eighths. And in fact, you know, we would submit that the 296 version of events here, the $296,000 that we asked for was supported by the record. We would defend that, we would stand here today and defend that decision. But the district court here, looking at the proofs, looking at the imprecision and accounting for that imprecision that's inherent in this process made that judgment call, and that's within the district court's discretion. It's, that is the purpose, the very purpose of the district court's finding in this case. I was objected this way. It struck me when I read this. Got three videos, one count, and then $94,000, another count, and the three are part of the $94,000 at least passed through the same device. Other than just kind of putting one's head in the vice. Well, I'll say head, I'm thinking of another anatomic reference. We run by putting the vice to cause pain, but why are you drafting it that way other than, why don't you answer the question? Sure. So the reason why it was drafted in that manner is because the government could prove beyond a reasonable doubt the receipt of the three videos in December of 2015. We knew that for a fact based on how we got to Mr. Sanders. So the receipt count could only be for those three videos based on the proofs that we had, and we're willing to go forward and prove a trial. Now, when you're looking at the possession piece, the possession piece was a much broader number, and we didn't know that at the time until we went and executed the search warrant in May of 2016. So that's why it's drafted the way it's drafted. But you knew when the indictment was drafted, that was way after the search warrant. Correct, correct. But we didn't, but I guess my point is we didn't have the proofs to, we didn't have the proofs about when the receipt occurred of those 94,000 images. We could only prove beyond a reasonable doubt the point at which he possessed those images. And just to touch on the double jeopardy argument and with regard to what Judge Ambrose said when my colleague was here, I disagree with Mr. Goldberger's assessment of Miller. Miller really is a very different, was a very different scenario than we have in this case. Miller was, it would be the same exact images that were charged as receipt than the same exact images that were charged in possession. And here we have different images on different times. And so this case is not controlled by Miller. And in fact, if you go back and look at Pelosi, Pelosi specifically is this case where we've got images that we could charge as receipt, images that were then possession. And the court said, well, for purposes of double jeopardy, receipt and possession could be lesser included offenses. And there could be a problem, but this is distinguishable because of the difference in the way it was charged. And there are legions of cases. The fact that he was possessing the three videos at the same time with the same conglomerate that's being charged. And the videos are not mentioned in the possession count, right? Correct. Well, the videos we made clear at the guilty plea hearing on the record that the factual basis for the receipt is different than the factual basis for the possession. Notwithstanding that, theoretically, we could have charged as part of the factual basis, the video possession of there was no charge of possession of the three videos. It was just charge a receipt of the video. That's correct. And even though the videos were, in fact, possessed when the 94 images were possessed, the fact that you just charged possession of the 94 images is sufficient separation that there's no jeopardy, double jeopardy problem. Yes, your honor. And that result makes sense for exactly the reason that Judge Ambrose brought up, because otherwise we would only be able to charge receipt and possession if there was some break in the possession or if there was some additional images that they possessed beyond that. And that's not what Miller says. I would say that this court's decision, I think the key really of understanding how Miller applies is to look at the reasoning of Miller. And the reasoning of Miller is based on Ball, the Supreme Court's decision in Ball, which was a gun case where it was a single unit, if you will, or a gun that was received and possessed at the same time and was charged with receipt and possession. And Miller's reliance on Ball tells us that you have to look at not only the law, but the facts and the facts here do not overlap. And we were very careful in that regard. So Miller is just not applicable on these facts. The double jeopardy analysis, I just want to touch on what you said, Judge McKee, is that I believe it was you, Judge McKee, who discussed the remedy piece here. There's just simply no support for the idea that if there is a remand in this case, that the remand for the remedy here would be to sentence on the lesser included offense. That's just, that is not the practice, it's not aligned with sentencing procedure. And I would also direct this Court to its own precedent in United States v. Caesar, which was a case that actually applied Miller after the fact, but in a different context to armed robbery and robbery. And the Court said there, we're going to, armed robbery, sorry, robbery is a lesser included offense of armed robbery. We agree with that. We're going to remand for the sentencing remedy here with instructions to sentence on the higher count. That is on all fours with what, at a minimum, at the best case scenario, would happen if this Court were to remand on the double jeopardy analysis, which of course we would, we would. Just, just as a factual question, if you know it, of the 94,000 items that you charge possession for, how many of those could you have charged receipt? That's a good question. I don't know the answer to that because I wasn't the AUSA on the case. But my understanding is that it was difficult to ascertain exactly when receipt occurred for each of those images that were contained on his drives because we only got, found him because of the three videos. In other words, the way that file structures are created and also dates of creation aren't so set in stone that we could prove, we would be comfortable to be able to stand up in court and say we could prove beyond a reasonable doubt that the creation date, right, that we could get from the files is, is, is actually the date of receipt, if that makes sense. Okay, just two more points I wanted to raise with regard to Paroline. Again, the district court disaggregated. No court other than Golan in the United, in the Ninth Circuit has said that a court has to disaggregate as a matter of law. The, in other words, come up with some mathematical formula where you've got to say this amount of a million dollars of harm, 900,000 of that is to the original abuser and, and 100,000 is to the possession and then further disaggregate from there. It's, it's, it, what Mr. Goldberger is asking this court to do or a rule that, that it would necessarily be required to, to write if you were going to write this opinion in a published opinion is to, it's too constricting. It doesn't make sense and it's out of line with what Paroline requires. If your honors don't have any other questions, I will see the remainder of my time. Thank you. So first on the possession versus receipt, if I may call your attention to the indictment itself on page 58 of the appendix and you will see that the indictment tracks the statute and it says it follows what I say, which is there is no such thing as possession of the images of this image or that image under the statute. Possession is of matter. The indictment says books, magazines, periodicals, films, videotapes, and other matter. There was no matter of any of those kinds other than the matter, which was as established at the time of the plea, a laptop computer and three hard drives. That's what's possessed. That's the thing that is possessed and that possession of, like all possessions, a continuing offense. What makes the possession of that thing criminal and not what we all do when we have computers in our offices and homes is that the matter contains visual depictions of child pornography. And again, the three received pictures were not excluded. Three videos says which contained more than 600 visual depictions which had been produced using materials that had been shipped and farms didn't name what they were. It just said in the broadest way and happened to mention a fact, which is a guidelines fact, 600 number. And at the time of the plea, the factual basis was established by the defendant's admission and the government's affirmation of that admission that among those images which made the possession of the computer illegal were the three videos. They were not excluded. They were included and expressly said you said they were. The videos received in December were possessed in May on the equipment with the possession of which was the crime in May. And the defendant admitted that at the time of the plea and the prosecutor, while disavowing the legal significance of that fact, admitted that this fact was true. We cited that page of the transcript several times. The three videos that were intercepted in December were included in the possession account that came down in May. Yes. And the question then to flip to that is, but the 94000 items that were included in the possession in May were not included in the receipt. That's right. In December. That is right. So that takes you outside of Miller, doesn't it? No, it takes you outside of the lesser included analysis. That's all. It's not a lesser included offense. They are. These are overlapping offenses and they are declared to be the same offense because of the essential facts at the plea on the possession count. Yes. Was there was specified exactly what was being possessed? Yes. What? The laptop and the three hard drives. That's what's possessed and possessing it is illegal because one or more visual images is included, it was found and on those items and it was specified that among the item, among the images found on the hard drives and which existed on the hard drives were the three videos and many more. Well, was this this was at the possession with respect to the possession count? Yes. Were the three videos mentioned? Yes. They were mentioned by the defendant and affirmed by the prosecutor that this was so. And the court mentioned a sentence in the district court. And it was then reiterated. It's something when we argued this point that sentence saying, right, it was not disputed, but that was a but this is a fact that what was disputed was the legal significance of the fact. And just my final point is my friend says that no court requires disaggregation. The court that requires disaggregation at the beginning of the restitution process is the Supreme Court of the United States. The five justice majority opinion written by Justice Kennedy, which says this has to be the first step. We don't need to discuss it in detail here because with that particular victim, Amy, there was evidence submitted that she had recovered from her psychological injuries due to the child abuse and suffered a terrible relapse and further harm only when she learned that her pictures were being distributed on the Internet. There was factual evidence submitted in that case, which was reference is referenced in the majority opinion by the Supreme Court and in Justice Sotomayor's dissent. The one justice who agreed with the government's position in that case that disaggregation was affirmatively shown by the zero starting point that was that was proved in that case. Thank you. Thank you. Reiterate what I said to the last case. Well, I know Mr. Wilberger's been in my town. Mr. Kern, I know I've seen you before. Oh, yes. Many times, Mr. Wilberger, but both did an incredible job. And I didn't mean to slight your ability by referring to Mr. Zolder's presence being epic. You really did a fine job.